IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENSUS USA INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 11-1000-SLR-SRF |
| | ) |
| NXEGEN, LLC AND NXEGEN | ) |
| HOLDINGS, INC., | ) |
| | ) |
| Defendants. | ) |

### REPORT AND RECOMMENDATION

**I.   INTRODUCTION**

On October 19, 2011, plaintiff Sensus USA Inc. ("Sensus") filed this action against defendants Nxegen, LLC and Nxegen Holdings, Inc. (together, "Nxegen")[1] alleging infringement of United States Patent Nos. 5,438,329 ("the '329 patent") and 7,012,546 ("the '546 patent"). Pending before the court is Nxegen's motion to dismiss or, in the alternative, to transfer venue to the District of Connecticut. (D.I. 10) For the following reasons, I recommend that the court deny Nxegen's motion to transfer, and deny Nxegen's motion to dismiss as moot.[2] (D.I. 10)

**II.   BACKGROUND**

Sensus is a Delaware corporation maintaining its principal place of business in Raleigh, North Carolina. (D.I. 31 at ¶ 3) Sensus has employees and offices located throughout the United

---

[1] Nxegen Holdings, Inc. has an ownership interest in Nxegen, LLC. (D.I. 12 at ¶ 2) Nxegen, LLC sells and provides various types of energy monitoring and control products, services, systems, and methods. (*Id.* at ¶ 3) Nxegen Holdings, Inc. does not directly sell any energy monitoring and control products, services, systems, or methods. (*Id.*)

[2] Due to the subsequent filing of a second amended complaint (D.I. 53) and Nxegen's answer thereto (D.I. 57), the motion to dismiss is now moot.

States and internationally. (*Id.* at ¶ 4) Sensus' key business, financial, and legal personnel are headquartered in North Carolina, and most of its research and development activities occur in North Carolina. (*Id.* at ¶ 5)

Nxegen is a Delaware corporation maintaining its principal place of business in Middletown, Connecticut. (*Id.* at ¶¶ 4, 6) Nxegen has approximately forty employees located in Connecticut, and the majority of its documents, files, computers, and servers are located in Connecticut and Massachusetts. (D.I. 12 at ¶¶ 9-10, 13-14)

On July 29, 2011, Nxegen sued Sensus in the District Court for the District of Connecticut (the "Connecticut Action"), alleging infringement of U.S. Patent Nos. 6,633,823 B2 ("the '823 patent") and 7,135,956 B2 ("the '956 patent"), directed to "System[s] and Method[s] for Monitoring and Controlling Energy Usage" (together, the "Nxegen patents"). (D.I. 11, Ex. 1) Nxegen filed an amended complaint on April 16, 2012. (D. Conn. C.A. No. 11-1197-WGY, D.I. 57) Sensus filed an answer and counterclaims to the amended complaint on April 30, 2012. (D. Conn. C.A. No. 11-1197-WGY, D.I. 65) A *Markman* hearing was conducted in the Connecticut Action on May 3, 2013. (D. Conn. C.A. No. 11-1197-WGY, D.I. 117)

Sensus filed the instant action on October 19, 2011 (the "Delaware Action"), alleging infringement of the '329 patent and the '546 patent, directed to a "Duplex Bi-Directional Multi-Mode Remote Instrument Reading and Telemetry System" and a "Modular Wireless Fixed Network for Wide-Area Metering Data Collection and Meter Module Apparatus," respectively. Sensus filed its second amended complaint on July 10, 2012 (D.I. 53), and Nxegen filed its answer and counterclaims to the second amended complaint on July 26, 2012 (D.I. 57). Sensus filed its answer to Nxegen's counterclaims on August 17, 2012. (D.I. 60)

2

### III. STANDARD OF REVIEW

The Federal Circuit prefers "to apply in patent cases the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy and the just and effective disposition of disputes, require otherwise." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *rev'd on other grounds, Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). If applied, the rule counsels that a later-filed action involving the same controversy should be dismissed, transferred or stayed in favor of the first-filed action. *See id.* at 938; *accord E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 976-79 (3d Cir. 1988) ("[c]ourts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule"). "The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank. It gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d at 971. Factors that have been regarded as proper bases for departing from the first-to-file rule include bad faith, forum shopping, when the second-filed action has "developed further than the initial suit," and "when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum." *Id.* (citations omitted).

Section 1404(a) of Title 28 of the United States Code grants district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Much has been written about the legal standard for motions to transfer under 28 U.S.C. § 1404(a). *See, e.g., In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011); *Jumara v. State Farm*

*Ins. Co.*, 55 F.3d 873 (3d Cir. 1995); *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367 (D. Del. 2012).

Referring specifically to the analytical framework described in *Helicos*, the court starts with the premise that a defendant's state of incorporation has always been "a predictable, legitimate venue for bringing suit" and that "a plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'" 858 F. Supp. 2d at 371 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)). Indeed, the Third Circuit in *Jumara* reminds the reader that "[t]he burden of establishing the need for transfer . . . rests with the movant" and that, "in ruling on defendants' motion, the plaintiff's choice of venue should not be lightly disturbed." 55 F.3d at 879 (citation omitted).

The Third Circuit goes on to recognize that,

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Id.* (citation omitted). The Court then describes some of the "many variants of the private and public interests protected by the language of § 1404(a)." *Id.*

> The private interests have included: plaintiff's forum of preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – **but only to the extent that the witnesses may actually be unavailable for trial in one of the fora**; and the location of books and records (**similarly limited to the extent that the files could not be produced in the alternative forum**).

4

> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two for a resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted) (emphasis added).

## IV. ANALYSIS

### A. First-Filed Analysis

The parties agree that the Connecticut Action was filed before the Delaware Action, but dispute whether the actions are sufficiently related to warrant application of the first-filed rule. For the first time in its reply brief, Nxegen contends that both actions concern its systems and methods for monitoring and controlling energy usage, and the pleadings, document discovery, deposition testimony, expert and factual issues in both matters will greatly overlap. (D.I. 39 at 6) In response, Sensus contends that the Connecticut Action is not sufficiently related to the action pending before this court because the cases involve different patents, different products, and different subject matter. (D.I. 49 at 2)

The Connecticut Action and the Delaware Action involve the same parties, but address different patents, different inventors, and different accused products. This court has often declined to apply the first-filed rule when the earlier-filed case involved different patents. *See Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 384-85 (D. Del. 2012); *Abbott Lab. v. Johnson & Johnson, Inc.*, 524 F. Supp. 2d 553, 557-58 (D. Del. 2007). Even when the same parties, the same inventors, and the same accused devices are involved in both actions, this court has declined to apply the first-filed rule when the patents are not part of the same patent family. *See Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 358 (D. Del. 2009). The

5

present matter involves different patents, different inventors, and different accused products than those at issue in the Connecticut Action. For these reasons, the actions are not sufficiently related to warrant application of the first-filed rule.

### B. Transfer of Venue

Turning to the discretionary issue of transfer, Sensus does not dispute that it could have brought the instant lawsuit in the District of Connecticut and, therefore, that requirement shall not be addressed further. *See* 28 U.S.C. § 1404(a). The court now considers the *Jumara* factors.

"The deference afforded plaintiff's choice of forum will apply as long as plaintiff has selected the forum for some legitimate reason." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) (internal citations omitted). As noted above, a party's state of incorporation is a traditional and legitimate venue. In the present matter, both Sensus and Nxegen have chosen to avail themselves of the rights, benefits, and obligations afforded by Delaware law by incorporating in Delaware. *See Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012), mandamus denied *sub nom. In re Altera Corp.*, 494 F. App'x 52 (Fed. Cir. 2012). Where, as here, all parties are incorporated in Delaware, this court defers to the plaintiff's choice of forum. *See id.*; *TruePosition, Inc. v. Polaris Wireless, Inc.*, C.A. No. 12-646-RGA-MPT, 2012 WL 5289782, at *3 (D. Del. Oct. 25, 2012). This factor weighs against transfer.

To support its choice of forum, Nxegen argues that judicial economy and convenience favor the District of Connecticut. (D.I. 11 at 14-16) Nxegen has legitimate and rational reasons for its forum preference which are addressed further below in connection with other *Jumara* factors. Under Third Circuit law, Nxegen's forum preference is not given the same weight as Sensus' preference.

A claim for patent infringement arises wherever someone has committed acts of infringement, to wit, "makes, uses, offers to sell, or sells any patented invention" without authority." *See generally* 35 U.S.C. § 271(a); *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998) (an infringement claim "arises out of instances of making, using, or selling the patented invention."). Nxegen contends that it does not provide any services or products in Delaware. (D.I. 11 at 16) Sensus does not dispute Nxegen's contentions on this factor. This factor weighs in favor of transfer.

In assessing the convenience of the parties, the district court should focus on the parties' relative physical and financial condition. For the first time in its reply brief, Nxegen contends that the convenience of the parties weighs in favor of transfer because Nxegen is a small, truly regional company that does not operate in Delaware. (D.I. 39 at 3) In support of its argument, Nxegen offers evidence indicating that most of its customers are located in Connecticut, and its revenue is mostly derived from Connecticut. (*Id.* at 4) Nxegen concedes that it has also done business in Colorado, Massachusetts, New York, Pennsylvania, and Maine. (*Id.* at 3) Sensus argues that Nxegen is not a regional company, and Delaware is a strategic region targeted by Nxegen in growing its business. (D.I. 30 at 17) According to Sensus, Nxegen's business documents reveal that its personnel routinely solicit business and participate in trade shows and conferences throughout the country. (*Id.* at 17-18)

Nxegen's allegations of inconvenience are contradicted by the fact that it voluntarily chose to incorporate in Delaware. *See Mallinckrodt*, 670 F. Supp. 2d at 357 (internal citations omitted) ("[W]hen a corporation chooses to incorporate in Delaware and accept the benefits of incorporating in Delaware, it cannot complain once another corporation brings suit against it in Delaware."); *Intellectual Ventures I LLC*, 842 F. Supp. 2d 744, 756 (D. Del. 2012) (concluding

7

that "a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself."); *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 572-73 (D. Del. 2001) ("[A]bsent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient."). Nxegen does not contend that the distance between Delaware and Connecticut is unduly burdensome. Moreover, nothing in the record indicates that litigating in Delaware would impose an undue financial burden on Nxegen. However, Nxegen has shown that it is a smaller company which has only forty employees and operates primarily in Connecticut, with operations extending to only five other states across the country. This factor weighs slightly in favor of transfer.

Considering whether witnesses "actually may be unavailable for trial in one of the fora" is a determinative factor in the transfer analysis. *Jumara*, 55 F.3d at 879. Also determinative is the location of books and records if "the files c[an] not be produced in the alternative forum." *Id.* Nxegen contends that these factors weigh strongly in favor of transfer because Nxegen's potential witnesses and evidence are not located in Delaware, and its non-party witnesses are not subject to the subpoena power of this court. (D.I. 11 at 16) In response, Sensus contends that Nxegen has failed to show that any of its witnesses or evidence will be unavailable for trial as required under *Jumara*. (D.I. 30 at 13) Moreover, Sensus contends that Delaware is a more convenient forum for its own witnesses, who will travel from North Carolina. (*Id.* at 16)

Nxegen does not advance any evidence that allows this court to conclude that its witnesses or records would not be available for trial in Delaware. Given that Nxegen advances no concrete inconvenience argument, both of these factors weigh against transfer.

8

With respect to the public interest factors, Nxegen contends that transferring the case to Connecticut would be practical due to the location of the witnesses, products, and Nxegen's headquarters. (D.I. 11 at 19) Nxegen further alleges that this action should be transferred to Connecticut because the Connecticut Action is ongoing, and litigating both cases in the same forum will promote judicial economy even if the cases are not consolidated. (*Id.* at 19) In response, Sensus contends that the Connecticut Action bears no relation to the present action because the litigations involve different patents, claims, inventors, prosecution histories, and allegedly infringing activities. (D.I. 30 at 18) Sensus does not dispute that most of the relevant evidence and witnesses are located in Connecticut. This factor weighs in favor of transfer.

Next, local interest in deciding local controversies is a neutral factor, as patent litigation does not constitute a local controversy in most cases. *See TriStrata Tech., Inc. v. Emulgen Labs.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008). Patent cases implicate constitutionally protected property rights. The resolution of patent cases is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature. Moreover, to characterize patent litigation as "local" undermines the appearance of neutrality that federal courts were established to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases.

Finally, the remaining *Jumara* public interest factors – the enforceability of a judgment, the public policies of the fora, the familiarity of the judge with state law, and the administrative difficulties in getting the case to trial – are undisputed and are therefore neutral.

Nxegen has the burden of persuading the court that transfer is appropriate, not only for its convenience but in the interests of justice. In this case, Sensus chose a legitimate forum that both parties have in common – their state of incorporation. Nxegen has not demonstrated that

9

litigating in Delaware would be unduly burdensome under the *Jumara* factors. Although neither party conducts its primary business operations in Delaware, it is a neutral forum that is no less convenient for Nxegen than Sensus' primary place of business in North Carolina. As this court has noted, discovery is a local event and trial is a limited event. *See Versata Software, Inc. v. Callidus Software Inc.*, --- F. Supp. 2d ---, 2013 WL 2111672, at *3 (D. Del. May 16, 2013). Therefore, the court is not persuaded that transfer is warranted in the interests of justice.

## V. CONCLUSION

For the foregoing reasons, I recommend that the court deny Nxegen's motion to transfer venue and deny as moot Nxegen's motion to dismiss. (D.I. 10)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the court's Standing Order In Non Pro Se Matters For Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the court's website, www.ded.uscourts.gov.

Because this Report and Recommendation may contain confidential information, it has been released under seal, pending review by the parties to allow them to submit a single, jointly proposed, redacted version (if necessary) of the Report and Recommendation. Any such

redacted version shall be submitted no later than June 21, 2013 for review by the court. The court will subsequently issue a publicly-available version of its Report and Recommendation.

Dated: June 14, 2013

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE